*15*

*FILED*
*2-3-16*
*FEB 03 2016*
*JUDGE CHARLES R. NORGLE*
*U.S. District Court Judge*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JAMES J. CARROLL

No. 14 CR 287-6

Judge Charles R. Norgle

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JAMES J. CARROLL, and his attorney, JEFFREY B. STEINBACK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2.     The indictment in this case charges defendant with bank fraud, in violation of Title 18, United States Code, Section 1344 (Count Nine).

3.     Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Nine of the indictment, which charges defendant with bank fraud, in violation of Title 18, United States Code, Section 1344.

### Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning not later than March 2007, and continuing through at least in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere, Warren N. Barr III, Robert D. Lattas, Jeffrey A. Budzik, Asif A. Aslam, Leonardo V. Sanders, and JAMES J. CARROLL knowingly participated in a scheme to defraud a financial institution, namely, AmTrust Bank, Bank of America, First Tennessee Bank, JP Morgan Chase Bank, Wells Fargo, and others, and to obtain money and funds owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, CARROLL served as the chief financial officer and a member of 13th & State LLC, a limited liability corporation created to facilitate the construction, development, and sale of approximately 250 condominium units at Vision on State, a high-rise building at 1255 S. State Street in Chicago. Barr, a real estate developer, was another member of 13th & State LLC.

The units at Vision on State were offered for sale beginning in approximately November 2004, during which time construction was ongoing. In late September 2005, IndyMac Bank extended a $55.7 million construction loan to 13th & State, LLC. The loan was backed by more than $19.5 million in guarantees signed by

2

CARROLL, Barr, and other investors. The proceeds from unit sales were to be used to pay off 13th & State's debts to IndyMac, the general contractor at Vision on State, and certain additional investors. Any remaining profits would have inured to the benefit of CARROLL, Barr, and the other members of 13th & State LLC.

By the spring of 2007, approximately 80 units remained for sale at Vision on State, and 13th & State LLC was having difficulty selling the units at prices that would allow 13th & State LLC to cover its costs and repay its loans to IndyMac and other investors. As a result, 13th & State LLC entered into an agreement with Sanders to sell the units to straw buyers recruited by Sanders.

CARROLL knew that Barr, Lattas, and Sanders agreed that Sanders's straw buyers would purchase the units at above-market prices set by Barr and Sanders. CARROLL, Barr, Lattas, and Sanders referred to the gap between the lower price that would allow 13th & State LLC to recover its costs, and the inflated price set by Barr and Sanders, as "the spread." CARROLL, Barr, Lattas, and others further knew that 13th & State LLC was paying large commission fees and other fees to Sanders without disclosing such fees to the lenders. These facts were material to the lenders' decisions to fund the mortgages.

CARROLL further knew that an employee at 13th & State LLC sent Bank of Commerce, which had lent money to 13th & State LLC, a document making it appear that "Leonardo Sanders or Nominee" had agreed to purchase approximately 60 units at Vision on State during October 2007. In fact, as CARROLL knew, Sanders had neither provided earnest money nor found buyers for those units.

3

In addition, CARROLL knew that, in November 2007, Co-Conspirator A provided a down payment of approximately $44,007.57 on behalf of one of Sanders's straw buyers because 13th & State LLC lacked sufficient funds to make the down payment itself. 13th & State later reimbursed Co-Conspirator A, and, as CARROLL knew, neither the payment by Co-Conspirator A nor the agreement to reimburse Co-Conspirator A was disclosed to the lender. CARROLL, Barr, and others concealed additional payments to Sanders by means that included issuing checks payable to "cash" rather than to Sanders himself.

In January 2008, as CARROLL knew, after Sanders failed to sell all of the remaining condominium units, Barr entered into an agreement with Aslam to sell the units to straw buyers recruited by Aslam for even higher prices than those paid by Sanders's straw buyers. CARROLL, Barr, Lattas, and Aslam further agreed to conceal from lenders substantial fees that that 13th & State LLC was providing to Aslam.

CARROLL knew that commission fees and other payments to Sanders and Aslam were required to be disclosed to the lenders. CARROLL, Barr, Lattas, and others concealed the payments to Aslam by means that included issuing payments to corporations designated by Aslam, such as Mughal Sports Corporation, SM Technologies, and Times Publications, rather than to Aslam himself.

CARROLL, Barr, and Lattas made and caused fraudulent statements to be made to Bank of America, N.A. in mid-May 2008, when Barr obtained a loan to purchase a condominium unit at Vision on State. Specifically, on or about May 13,

4

2008, CARROLL knowingly signed a fraudulent HUD-1 settlement statement making it appear that: (1) Barr was purchasing the unit for $521,250 and was providing more than $112,000 to purchase the unit; and (2) 13th & State LLC was receiving more than $123,000 from the sale of the unit. In fact, as CARROLL knew, the down payment was made by 13th & State, rather than Barr himself. In addition, as CARROLL, Barr, and Lattas knew, the unit's true sales price was approximately $412,000, and 13th & State LLC received a net payment from the sale that was substantially less than $123,000.

CARROLL acknowledges that the deposits of Bank of America, N.A. were insured by the Federal Deposit Insurance Corporation and that true information about the sales price of a unit was material to Bank of America's decision to issue the loan.

CARROLL, Barr, Lattas, Budzik, Aslam, Sanders, and others caused buyers to fraudulently obtain approximately 67 mortgage loans to purchase condominium units at Vision on State, in a total amount of approximately $22,872,528. CARROLL acknowledges that the lenders and their successors suffered losses of approximately $13,045,319, as follows: AmTrust Bank ($193,800), Bank of America ($4,829,690), CitiMortgage ($386,765), Clearwater Mortgage ($205,000), Countrywide Savings Bank FSB ($156,300), Fannie Mae ($192,000), First Horizon Home Loans ($226,385), Freddie Mac ($1,991,578), Guaranteed Rate, Inc. ($1,064,451), HSBC Mortgage Corporation ($245,650), JPMorgan Chase Bank ($392,200), and Wells Fargo Bank ($3,161,500).

5

On or about May 13, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Barr, Lattas, and CARROLL knowingly executed and attempted to execute the scheme by causing Bank of America, N.A. to fund a loan in the amount of approximately $417,000 for Barr to purchase 1255 S. State Street, Unit 1703 in Chicago, Illinois, in violation of Title 18, United States Code, Section 1344.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

6

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b.      **Offense Level Calculations**.

i.      The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii.      Pursuant to Guideline § 2B1.1(b)(1)(K), the base offense level is increased by 20 levels because the loss for which defendant is responsible was approximately $13,045,319, which is more than $9,500,000 and less than $20,000,000.

7

iii.     Pursuant to Guideline § 2B1.1(b)(10)(C), the base offense level is increased by 2 levels because the offense involved sophisticated means.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated   Advisory   Sentencing   Guidelines   Range**.
Therefore, based on the facts now known to the government, the anticipated offense
level is 26 which, when combined with the anticipated criminal history category of I,
results in an anticipated advisory sentencing guidelines range of 63 to 78 months'
imprisonment, in addition to any supervised release, fine, and restitution the Court
may impose.

e.     Defendant and his attorney and the government acknowledge
that the above guidelines calculations are preliminary in nature, and are non-
binding predictions upon which neither party is entitled to rely. Defendant
understands that further review of the facts or applicable legal principles may lead
the government to conclude that different or additional guidelines provisions apply
in this case. Defendant understands that the Probation Office will conduct its own
investigation and that the Court ultimately determines the facts and law relevant
to sentencing, and that the Court's determinations govern the final guideline
calculation. Accordingly, the validity of this Agreement is not contingent upon the
probation officer's or the Court's concurrence with the above calculations, and
defendant shall not have a right to withdraw his plea on the basis of the Court's
rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not
governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting
any of the sentencing guidelines may be corrected by either party prior to
sentencing. The parties may correct these errors either by stipulation or by a

9

statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range. Defendant shall be free to recommend any sentence.  Defendant

understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Regarding restitution, defendant acknowledges that the total amount of restitution owed to the following victims and their successors is $13,045,319, as follows:  AmTrust Bank ($193,800), Bank of America ($4,829,690), CitiMortgage ($386,765), Clearwater Mortgage ($205,000), Countrywide Savings Bank FSB ($156,300), Fannie Mae ($192,000), First Horizon Home Loans ($226,385), Freddie Mac ($1,991,578), Guaranteed Rate, Inc. ($1,064,451), HSBC Mortgage Corporation ($245,650), JPMorgan Chase Bank ($392,200), and Wells Fargo Bank ($3,161,500),

minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.  Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 287-6.

12

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

21.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear

14

voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Waiver of appellate and collateral rights**.   Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section

15

2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands

that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.    Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or

defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

      a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

      b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's partnerships or corporations.

29.     Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

30.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this

Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.  Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____2/3/16_____

_____
ZACHARY T. FARDON
United States Attorney

_____
CHRISTOPHER R. MCFADDEN
Assistant U.S. Attorney

_____
JAMES J. CARROLL
Defendant

_____
JEFFREY B. STEINBACK
Attorney for Defendant

21