UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CR 287-6 |
| | ) | |
| JAMES J. CARROLL, | ) | The Honorable |
| | ) | Charles R. Norgle, Sr., |
| Defendant. | ) | Presiding Judge |

**DEFENDANT JAMES CARROLL'S SENTENCING POSITION PAPER**

Now comes the defendant, JAMES J. CARROLL, by and through his attorney, JEFFREY B. STEINBACK, and respectfully requests that this Honorable Court, in light of *Gall v. United States*, 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary to comply with the purposes of sentencing. In support, the following is offered:

**Introduction**

The government described the instant offense as a "builder bailout" mortgage fraud which involved multiple-family condominium developments where the builder is "stuck" with inventory it is unable to sell at prices to cover expenses. (PSR ¶ 8) Therefore, in order for the builder to recoup its money, the builder develops a scheme to sell leftover inventory at prices sufficient to cover expenses. (PSR ¶ 8)

By the time Mr. Carroll comes before this Honorable Court for sentencing, it will have been over eight years since his indictment on May 15, 2014 for this "builder bailout" scheme. Mr. Carroll has spent much of this time reflecting on the wrongheaded decisions he has made leading

1

to his admission prior to his arrest, indictment, upcoming sentencing, and his future. In fact, the PSR provides a concise and clear description of Mr. Carroll's remorse and desire to make amends when the probation officer writes that Mr. Carroll "acknowledges his guilt and provided cooperation *prior to being criminally charged"* and Mr. Carroll "*cooperated from the very beginning of the investigation, providing a substantial amount of business records. Mr. Carroll was interviewed and provided information regarding his involvement in the scheme and the involvement of others (pre-indictment)."* (PSR ¶¶ 24 and 25) (Emphasis added.)

Realizing the harm he caused to his victims, Mr. Carroll has readily confessed his wrongdoings. He is extraordinarily humbled, contrite, and deeply ashamed of himself. And he remains anxious and fearful of an uncertain future.

Mr. Carroll accepts the gravity of his criminal behavior. He was clearly wrong, offering no excuses. Rather, he offers himself to the mercy of this Court, to take into consideration not only the actions that brought him before this Court, but the full value of a man's life that was otherwise guided by principles of honest hard work, benevolence, and the inherent desire to help people, when fashioning its reasonable sentence.

Considering both the nature and circumstances of the instant offense, his personal history and characteristics, the absence of any prior criminal history, his truthful cooperation and substantial assistance to investigators and this prosecution prior to his being criminally charged, and considerations of recidivism and specific deterrence, Mr. Carroll respectfully asks this Honorable Court to sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**Sentencing Considerations Pursuant to 18 U.S.C. § 3553(a)**
**Supporting a Below-Guidelines Sentence**

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, history and characteristics, not just the crime. *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable sentencing range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guidelines ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the particular circumstances of the case. *Nelson v. United States*, 555 U.S. 350 (2009) (*per curiam*); *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). So long as the selected sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

In fashioning his sentence that is sufficient but not greater than necessary, Mr. Carroll respectfully asks this Court to consider the nature and circumstances of the offense, his personal history and characteristics, and his acceptance of responsibility and his substantial cooperation.

    a.    **Advisory Guideline Range**

As the Seventh Circuit has formally established, a sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). According to the Presentence Report ("PSR"), the probation officer calculates the advisory Sentencing Guidelines as follows:

    Base Offense Level §2B1.1(a)(1):        7

    Amount of Loss §2B1.1(b)(1)(K):       + 20

| | |
|---|---|
| Sophisticated Means §2B1.1(b)(10)(C): | +  2 |
| Acceptance of Responsibility §3E1.1: | -3 |
| Total | 26 |

Mr. Carroll has zero criminal history points, placing him in criminal history Category I. Coupling the resulting anticipated offense level of 26 with a criminal history category of I, Mr. Carroll's advisory sentencing range is 63 to 78 months' imprisonment.

However, not all sentences within the guideline range are reasonable. *See United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors . . . He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.")

According to the Plea Agreement, the government will make known to the Court the extent of Mr. Carroll's cooperation , and shall move the Court to depart downward from the low-end of the applicable guideline range and shall recommend a sentence that includes 66 percent reduction of the low-end of the applicable guideline range.

As a result, in the Government's Position Paper, the government "seeks a two-thirds reduction from the lower end of that range, pursuant to Guideline §5K1.1, because of [Mr. Carroll's] substantial assistance in the form of his provision of truthful information regarding the fraudulent scheme. Accordingly, the government considers a downward departure to a sentence of 42 months' incarceration to be appropriate." (Dkt. No. 363, pages 5-6)

Mr. Carroll respectfully asks this Court to exercise its discretion, in accordance with the § 3553(a) factors and *Gall*, to deviate even further from this advisory guideline range.

4

b.     **Nature and Circumstances of the Offense**

The extent of the offense conduct has been accurately set forth in the Presentence Investigation Report and the Government's Position Paper. We anticipate no further aggravating matters will be introduced.

Mr. Carroll has long since embraced full responsibility for his actions through his early admission of guilt, his written plea agreement, and his complete and candid cooperation with the government.

c.     **Personal History and Characteristics**

James Carroll turned 71 years old on February 26, 2022. He was born as one of four children to Michael and Ann. Mr. Carroll grew up in a lower-middle class family on the south side of Chicago. His mother was a homemaker and died from cancer in 2003, while his father worked as an elevator operator for a tobacco company and died from cancer in 1989. Mr. Carroll has three siblings, all of whom he remains in contact with.

Mr. Carroll first married Mary Pierce in 1973, but this marriage ended in 1980 due to irreconcilable differences. On April 4, 1981, James married Colleen Dowdall and together they have four children: Courtney Carroll, age 39, who resides in Naperville, Illinois, and is employed as a Vice President at U.S. Bank Corporate; Kevin Carroll, age 37, who resides in Naperville, Illinois, and works in sales; Justin Carroll, age 33, who is a physician residing in Fort Worth, Texas; and Julie Carroll, age 29, who is a physician.

Mr. Carroll and his family have lived in the same home in Naperville for the past 30 years. It is a two-story, four-bedroom home, with three and a half baths, a living room, dining room, kitchen, office, basement, and a two-car attached garage. The probation report indicates that the

home is very clean and tidy. (PSR ¶ 59)

Mr. Carroll is presently 71 years old. On August 9, 2022, Jim saw his physician, Dr. Kenneth Weinberg, who is treating Jim for Premature Ventricular Contraction ("PVC"). Dr. Weinberg has ordered continuous monitoring for the next two weeks and has ordered a MRI scan of Mr. Carroll's chest. In addition to his PVC heart ailment, Jim was diagnosed with hypothyroidism approximately nine years ago. He also suffers from arthritis in both of his knees, wrists, and thumbs, which he treats with over-the-counter pain medication.

James Carroll is a truly thoughtful and caring individual. This is evidenced by the letters of support written on his behalf by professional colleagues, friends, and family members. Joseph S. Parisi, an attorney who has practiced law in Chicago with the law firm of Masuda, Funai, Eifert & Mitchell, Ltd. for the past 46 years describes how he has known Jim Carroll for over 30 years. Over this 30-year period, Mr. Parisi has worked with Jim on various matters and "always found him to be ethical, diligent, honest and forthright in all of his business dealings." Mr. Parisi also describes how a close personal friendship has developed as a result of their business relationship. In addition, Mr. Parisi writes that Jim is a very charitable person, and devotes his time, energy and efforts to raise funds for the American Diabetes Association, and has routinely raised over $1,000 per ride in the ADA's annual fund raising bike ride event.

Shashank Goel has written how he came to the Unites States from India in 1988 to study at the University of Michigan. Mr. Goel went on to lead the Engineering Division at Chicago Faucet Company, where he met James Carroll. While Mr. Goel initially reported to Mr. Carroll at work, a very deep personal friendship has developed and they are like family. Since 1993, Mr. Goel and his wife have spent every Thanksgiving and almost every Christmas at the Carroll's

6

home, where they are considered part of the family.

At the time the Presentence Report was prepared, Jim was employed as a director for IPM Foods ("IPMF") and oversaw their finances, sales, and customer relationships. On June 5, 2019, the owners of IPMF, Pawal and Iwona Marciniak, wrote a letter addressed to this Court in which they exuded the highest level of praise for James Carroll's character and Jim's substantial contributions to their company. The probation officer verified that Mr. Carroll's employer at the time was aware of Jim's involvement in the instant offense and is very supportive of him. (PSR ¶ 72) The probation officer spoke with the President and co-owner of IPM Foods, Pawel Marciniak, who not only confirmed Mr. Carroll's employment, but described James Carroll as "absolute honest" and the "perfect" employee, adding that Mr. Carroll is reliable, trustworthy, hardworking and responsible. (PSR ¶ 72) Mr. Marciniak indicated that Mr. Carroll has been candid and upfront with him regarding his involvement in the instant case since being hired. Mr. Marciniak added that audits are routinely conducted since Mr. Carroll's employment in January 2011, and that there have been no issues or indicators that Mr. Carroll has committed any fraudulent behavior in his role over the past nine years. (PSR ¶ 72)

The relationship between James Carroll and the Marciniaks' has since broken down. David Stein, an attorney with Masuda Funai and represents Jim, has written this Court a letter dated August 11, 2022. In his letter, Mr. Stein explains, not only in detail, but provides documents in support of his representations to this Court. Specifically, Mr. Stein explains that the Marciniaks and IPMF entered into a transaction with an affiliate of a private equity firm, Trivest Partners LP, which would trigger a large payment due and owing to Mr. Carroll pursuant to a Phantom Stock Equity Agreement ("PSE") the parties entered into in 2017. Mr. Stein explains

7

that IPMF was unwilling to make the payments owed to Mr. Carroll and filed a lawsuit in DuPage County "concocting a bad faith theory that the PSE was forged." Mr. Carroll has filed a counter-complaint in the matter. Simply put, Warren Spencer, a leading handwriting expert, examined the two PSE Agreements dated March 13, 2013 and June 1, 2017, and a number of other writing samples. After explaining his method and manner for examining the signatures and initials, Mr. Spencer concluded on August 11, 2022, "It is my opinion to a reasonable degree of professional certainty that the disputed signatures and initials are genuine." Not only does Mr. Stein provide this Court with Mr. Spencer's opinion that the PSE Agreement is authentic, Mr. Stein also provides additional evidence of Pawal Marciniak's lack of candor and truthfulness under oath. Specifically, the lawsuit IPMF filed in DuPage County, and the relevant pages from Pawal Marciniak's deposition in *Regal Equipment, Inc. v. IPM Foods, LLC.*[1] Accordingly, Mr. Stein urges this Court to not to give the recent letter submitted by the Marciniaks absolutely no consideration and weight.

It is abundantly clear that James Carroll is gainfully employed. On August 12, 2022, Frank San Roman, the President and CEO of Walker Manufacturing Group, has written a letter in support of James Carroll. In his letter, Frank writes that James Carroll began working with Walker Manufacturing Group in 2013 and that Jim was an outstanding Chief Financial Officer "of great ability and very honest," until he left in 2016. Frank also writes how he asked Jim to rejoin Walker Manufacturing Group in 2020, and Jim agreed. Frank added, "[Jim] helped us navigate very difficult refinance, that helped save our company and secure the jobs of 250 plus team

---

[1] In the lawsuit filed in DuPage County, *IPMF, LLC v. James Carroll,* No. 2021 MR 211, paragraph five of the Complaint asserts that Mr. Carroll was terminated from his employment with IPMF on October 12, 2020. Conversely, Pawal Marciniak repeatedly testified in his deposition in an unrelated matter on April 2, 2021, that Mr. Carroll was no longer employed by IPMF because Jim retired.

8

members and their families." Frank San Roman closes his letter to this Court with "I could not ask for a better person to work with and call a friend."

The misconduct that has placed Mr. Carroll before this Court is an aberration in the more general sense of the term. While the conduct that Mr. Carroll has engaged in was wrong, it is a far cry from his overall character.

### d. Deterrence, Just Punishment, and Other Policy Considerations

This Court is inherently tasked with an incredibly difficult decision as to what a just punishment is for any given defendant. While the sentencing guidelines work as a benchmark in sentencing, on their face, they fail to accurately illustrate the reality of the crime of conviction. Mr. Carroll pursued a course of post-offense conduct long before he was charged. James Carroll will be a 69-year-old first time, non-violent, offender who poses absolutely no threat or risk of re-offending in light of his conduct since 2014. Jim's behavior in the eight years goes well beyond honest hard work and law-abiding behavior. It entailed substantial cooperation with the government and its investigation into his involvement in the scheme and the involvement of others prior to indictment. An appropriate sentence in this case should significantly vary from the advisory guidelines.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2). As a first-time felony offender who accepted personal responsibility in the fullest sense of that phrase, whose crime, although serious, was non-violent in nature, whose cooperation provided significant results, a non-custodial sentence, would meet the

goals of sentencing. *See* 28 U.S.C. § 994(j), *amended (this section unaffected)* by PL 11-273, October 12, 2010, 124 Stat. 2858 (probation is an appropriate sentence for "cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," reserving imprisonment for "a person convicted of a crime of violence that result[ed] in serious bodily injury").

The community is aware of Mr. Carroll's cooperation and arrest. As to general deterrence, a message has already been sent to community at large that fraud will not be tolerated and will be significantly punished.

Mr. Carroll's conduct in this case has already resulted in certain punishment, a federal felony conviction, which will affect him for the rest of his life. A non-custodial sentence sends a message that our system can be both just and merciful, encouraging those similarly situated, to choose candor and truth over denial and deception.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court affirmed the district court's sentence of 36 months probation, despite an advisory guideline range of 30 to 37 months, based, in part, on the defendant's lack of criminal history. *Gall*, 128 S.Ct at 593. The Supreme Court rejected the Eighth Circuit's conclusion that a sentence of probation was inadequate and beyond the realm of available sentencing choices and emphasized the fact that a sentence of probation is in fact punishment and is not merely "an act of leniency." *Gall*, 128 S.Ct. at 594-96.

While clearly custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders sentenced to probation are nonetheless subject to conditions which restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587 (2001) (inherent in the very nature of probation is that probationers do not enjoy the absolute

liberty to which every citizen is entitled). For example, probationers may not leave the judicial district, move, or change jobs without notifying, and, in some instances, receiving permission from their probation officer or the court. *Id.* In addition, they must report regularly to their probation officers, permit unannounced visits to their home, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. *See* U.S.S.G. § 5B1.3. Furthermore, most probationers are also subject to individual "special conditions" imposed by the court. Finally, a probationer always faces the possibility of harsh consequences if a condition of his probationary term is violated. *See* Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) (probation is not merely letting an offender off easily).

If this Court decides to impose a period of home confinement as a condition of probation, Mr. Carroll will be confined to his home. He would not be allowed to leave his home to visit friends, see a movie, eat in a restaurant, sit in the park, travel over a weekend, or do any of the small acts that provide so much of the pleasure and enjoyment of life and which the rest of us take for granted. He will, for all practical purposes, be a prisoner in his home and not be able to leave except for work, or medical reasons, or other limitations established by this Court.

In addition, as the Court is more aware of than most in society, a federal conviction is a stigma that blights a life forever and has serious and severe consequences on Mr. Carroll. Such punishment provides a permanent reminder of Jim's wrong doing, and, for Jim, carries a high degree of guilt and shame.

Thus, given the absence of criminal history, coupled with Mr. Carroll's otherwise law-abiding, conscientious and upstanding manner in which he has lived, we respectfully request

that he be sentenced to a non-custodial sentence.

## CONCLUSION

This Court maintains significant discretion to not only craft a reasonable, appropriate sentence pursuant to the Guidelines, but to consider the totality of circumstances surrounding the individual involved, including, among other factors, the nature and circumstances surrounding Mr. Carroll's conviction, his personal history and characteristics, as well as the long-standing collateral consequences the current matter will have on him. The foregoing considerations outlined in this submission show only a small portion of who Mr. Carroll really is: a devoted and dedicated father, husband, son, brother, uncle, and friend. The conduct that placed him before this Court was not driven by any sort of evil malice; rather, it was born of desperation and an inability to let a real estate venture fail. It has already, and will continue, to adversely affect the rest of his life. In sentencing Mr. Carroll to the most lenient sentence possible under the law, this Court would accomplish the goals of sentencing by punishing the individual – not the crime – to a sentence that is sufficient, but not greater than necessary to comport with all of the sentencing considerations contained in 18 U.S.C. § 3553(a).

    Respectfully submitted,

    /s/ Jeffrey B. Steinback
    JEFFREY B. STEINBACK
    Attorney for James Carroll

Jeffrey B. Steinback
8351 Snaresbrook Road
Roscoe, IL 61073
(847) 624-9600

## CERTIFICATE OF SERVICE

I, Jeffrey B. Steinback, the attorney for Defendant James Carroll, hereby certify that I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

                                        Respectfully submitted,

                                        /s/ Jeffrey B. Steinback
                                        JEFFREY B. STEINBACK
                                        Attorney for James Carroll

Jeffrey B. Steinback
8351 Snaresbrook Road
Roscoe, IL 61073
(847) 624-9600